UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

THE UNITED STATES OF AMERICA )
and the STATE OF INDIANA *ex rel.* )
DION SNIDER, )
 )
     Plaintiffs, )
 )
vs. )   No. 2:18CV210
 )
 )
CENTERS FOR PAIN CONTROL, INC. )   **FILED UNDER SEAL**
and CHETAN PURANIK, M.D. )
 )
     Defendants. )

-FILED-

MAY 31 2018

ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

## **INTRODUCTION**

This action is brought by Plaintiff/Relator, Dr. Dion Snider, D.C. ("Dr. Snider"), on behalf of the United States of America and the State of Indiana under the False Claims Act, 31 U.S.C. § 3729, et seq., and the Indiana False Claims and Whistleblower Protection Act, Indiana Code § 5-11-5.5-1, et seq. This is a civil action to recover damages based on Defendants' violations of the Anti-Kickback Statute by knowingly offering free massage therapy sessions to Medicaid and Medicare beneficiaries as long as they undergo costly Trigger Point Injection procedures on the same date of service.

Providers who offer free services to Medicaid and Medicare beneficiaries in order to induce them to rely on the providers for other, more expensive services harm these patients because the patients are improperly influenced to make medical care choices for reasons other than the provision of the best, medically necessary care available to them. Likewise, the competitive advantage gained by providers such as the Defendants who violate the Anti-Kickback Statute

forces other good medical providers who follow the law out of business. In further support of his *Qui Tam* Complaint, Dr. Snider alleges the following:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action under 28 U.S.C. § 1331, 31 U.S.C. § 3730, and 31 U.S.C. § 3732(b).

2. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because the Defendants can be found in, reside in, transact business in, and have committed the alleged acts in Lake County and Porter County, Indiana, which is in the Northern District of Indiana.

3. Venue is proper in this District in Hammond, Indiana, under 28 U.S.C. § 1391 and 31 U.S.C. § 3732 because the Defendants can be found in, reside in, transact business in, and have committed the alleged acts in Lake County and Porter County, Indiana.

4. Dr. Snider does not know of any other complaints that have been filed against the Defendants alleging the same or similar violations of the False Claims Act and the Indiana False Claims and Whistleblower Protection Act as the allegations in this Complaint.

5. Dr. Snider does not know of any disclosure of the same or similar facts as alleged in this Complaint in any criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media.

6. Dr. Snider brings this action based on his direct knowledge and also on information and belief.

7. Dr. Snider's allegations are independent of and materially add to any publicly

2

disclosed allegations and, thus, to the extent there has been a public disclosure, Dr. Snider is an "original source" of the information in this Complaint, as defined by 31 U.S.C. § 3730(e)(4)(B).

8. Contemporaneously with this filing, Dr. Snider has served a copy of the Complaint and written disclosure of substantially all material evidence and information in his possession on the United States and State of Indiana Governments as required by 31 U.S.C. § 3730(b)(2) and Ind. Code § 5-11-5.5-4.

9. The United States and the State of Indiana are the real parties in interest to this proceeding.

## FACTUAL BACKGROUND

10. Dr. Snider is a board-certified chiropractor in the State of Indiana.

11. Defendant, Dr. Chetan Puranik, M.D. ("Defendant Puranik"), is the CEO of Defendant, Centers for Pain Control, Inc. ("CPC"), which he established in or around 2009 as an independent medical practice.

12. CPC has five locations in Northwest Indiana, specifically, in La Porte, Valparaiso, Hobart, Crown Point, and Munster, Indiana.

13. Dr. Snider has practiced chiropractic medicine since 1998.

14. Dr. Snider has a broad network of business contacts and former patients in and around Indiana, which he has fostered over his years of experience in the State.

15. Dr. Snider has twenty years of experience running a chiropractic medicine practice.

16. In or around March 2016, Defendant Puranik approached Dr. Snider with a proposal for Dr. Snider to become affiliated with CPC to provide chiropractic and rehabilitation services in Munster, Indiana and to monitor and advise on CPC's business systems, marketing

3

efforts, and regulatory compliance at all of CPC's locations, including CPC's Valparaiso, Crown Point, Hobart and LaPorte offices.

17. Beginning in April 2016, Dr. Snider worked for CPC, first as an independent contractor and then as an employee.

18. As a member of CPC's marketing group, Dr. Snider noticed that CPC had created flyers for prospective patients, advertising "free massages." Dr. Snider informed CPC that there should be a disclaimer on these flyers that the "free massages" do not apply to Medicaid or Medicare beneficiaries. Dr. Snider's comments were ignored.

19. Dr. Snider was informed by Dr. Rohit Puranik, Defendant Puranik's brother, that CPC "uses" massage therapy to "increase volume."

20. Dr. Snider also confirmed in CPC's billing claims data that CPC was not billing Medicare and Medicaid patients for massage therapy sessions, where the patients were also receiving, and the respective Government payer was being billed for, trigger point injections on the same date of service.

21. The following list of patients, dates of services, and billing claims is exemplary and not exhaustive.

22. On January 17, 2017, CPC patient N.K. was given a trigger point injection, which was subsequently billed by CPC using CPT Code 20552. On the same date, N.K. was also scheduled for and received massage therapy at CPC's Valparaiso location, for which CPC did not submit a bill. However, on all of the following dates, N.K. received massage therapy at CPC, which was subsequently billed by CPC using CPT Code 97124: 3/2/17; 3/15/17; 4/19/17; 5/4/17; 5/11/17; 5/25/17; 6/15/17; 6/29/17 (2 units billed); 7/6/17; 8/24/17; 9/21/17; 10/5/17; 11/2/17; 11/15/17; and 12/13/17.

4

23. Similarly, on March 6, 2017, CPC patient L.H. was given a trigger point injection, which was subsequently billed by CPC using CPT Code 20552. On the same date, L.H. was also scheduled for and received massage therapy at CPC's Valparaiso location, for which CPC did not submit a bill. However, on all of the following dates, L.H. received massage therapy at CPC, which was subsequently billed by CPC using CPT Code 97124: 6/28/17; 7/7/17; 11/14/17.

24. Similarly, on March 22, 2017, CPC patient H.F. was given a trigger point injection, which was subsequently billed by CPC using CPT Code 20552. On the same date, H.F. was also scheduled for and received massage therapy at CPC's Valparaiso location, for which CPC did not submit a bill. However, on all of the following dates, H.F. received massage therapy at CPC, which was subsequently billed by CPC using CPT Code 97124: 3/3/17; 3/17/17; 3/31/17; 4/7/17; 4/18/17; 4/25/17.

25. Similarly, on April 10, 2017; July 14, 2017; October 31, 2017; and February 26, 2018, CPC patient J.M. was given a trigger point injection, which was subsequently billed by CPC using CPT Code 20552. Upon information and belief, on the same dates, J.M. was also scheduled for and received massage therapy at CPC, for which CPC did not submit a bill. However, on all of the following dates, J.M. received massage therapy at CPC, which was subsequently billed by CPC using CPT Code 97124: 4/11/17; 4/20/17; 5/9/17; 6/15/17; 6/29/17 (2 units billed); 7/20/17.

26. Similarly, on May 10, 2017, CPC patient W.S. was given a trigger point injection, which was subsequently billed by CPC using CPT Code 20552. Upon information and belief, on the same date, W.S. was also scheduled for and received massage therapy at CPC, for which CPC did not submit a bill. However, on all of the following dates, W.S. received massage therapy at CPC, which was subsequently billed by CPC using CPT Code 97124: 3/31/17; 4/7/17; 4/14/17; 4/21/17.

27. Similarly, on June 2, 2017, CPC patient E.K. was given a trigger point injection, which was subsequently billed by CPC using CPT Code 20552. Upon information and belief, on the same date, E.K. was also scheduled for and received massage therapy at CPC, for which CPC did not submit a bill. However, on all of the following dates, E.K. received massage therapy at CPC, which was subsequently billed by CPC using CPT Code 97124: 7/6/17; 7/13/17; 8/23/17; 9/21/17; 10/12/17; 10/24/17; 11/2/17.

28. Based on the foregoing, CPC has a pattern and practice of giving patients free massages, as long as they undergo a trigger point injection on the same date of service.

29. Based on his direct observations, Dr. Snider believes that CPC's payer mix is 75% Medicaid and 15% Medicare.

30. When Dr. Snider notified Defendant Puranik that CPC's pattern and practice and practice of giving patients free massages, as long as they undergo a trigger point injection on the same date of service, amounts to illegal inducement, Defendant Puranik refused to pay Dr. Snider.

31. Defendant Puranik terminated Dr. Snider from his employment with CPC on March 23, 2018.

32. To this date, Defendant Puranik and CPC still refuse to pay him for his services.

## LEGAL BACKGROUND

33. The federal Medicaid program is a jointly funded (by both the federal and state governments) health care program for low-income persons, blind, disabled, or members of families with dependent children or qualified pregnant women or children.

34. The federal Medicare program is a federally funded health care program for the elderly.

6

35. The Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b, makes it a federal crime to knowingly and willfully offer or pay any remuneration, directly or indirectly, in cash or in kind to any person to induce such person to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program. … 42 U.S.C. § 1320a-7b(b).

36. A person violates the AKS if one purpose of an arrangement is to induce a referral, even if there are other legitimate purposes for the arrangement.

37. Compliance with the AKS is a material condition of payment under both the Medicare and Medicaid programs.

38. The False Claims Act, 31 U.S.C. § 3729(a)(1)(A), imposes liability upon those who knowingly present or cause to be presented false claims for payment or approval, and those who make or use, or cause to be made or used, false records or statements material to false claims. Violators are liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages sustained by the Government. 31 U.S.C. § 3729(a)(1).

39. Indiana's False Claims and Whistleblower Protection Act, Indiana Code § 5-11-5.5-1, *et seq.*, is modeled on the federal False Claims Act and proscribes the same conduct. Violators are liable for a civil penalty of at least $5,000 and for up to three times the amount of damages sustained by the State. Ind. Code § 5-11-5.5-2(b).

40. Knowingly submitting a claim for payment for services rendered to a Medicare or Medicaid beneficiary in violation of the AKS constitutes a false or fraudulent claim for purposes of the False Claims Act and the Indiana False Claims and Whistleblower Protection Act. 42 U.S.C. § 1320a-7b(g).

41. The False Claims Act, 31 U.S.C. § 3730(h), provides relief to employees who have been discriminated against in the terms and conditions of employment by their employer because the employee objected to a violation of the False Claims Act.

42. Indiana's False Claims and Whistleblower Protection Act, Indiana Code § 5-11-5.5-8, provides relief to employees who have been discriminated against in the terms and conditions of employment by their employer because the employee objected to a violation of Indiana Code § 5-11-5.5-2.

### COUNT I – Violations of the False Claims Act and Indiana's False Claims and Whistleblower Protection Act

43. Dr. Snider incorporates all of his above allegations as though fully stated herein.

44. Defendants knowingly and willfully offered and gave remuneration to Medicaid and Medicare beneficiaries in the form of free massage therapy sessions to induce such persons to purchase or order Trigger Point Injection services from the Defendants, which were paid for, in whole or in part, by a federal medical program. In so doing, Defendants violated the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b.

45. All of the claims for payment to the Government payers for Trigger Point Injections presented by the Defendants from June 2012 through the present are legally false or fraudulent because all such claims are tainted by the above violations of the Anti-Kickback Statute.

46. As a result of the presentment of these false or fraudulent claims from at least June 2012 through the present, the United States and the State of Indiana have been damaged and continue to be damaged in an amount yet to be determined, but estimated in the millions of dollars.

47. Based on the foregoing, Defendants are liable for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., and Indiana's False Claims and Whistleblower Protection Act, Indiana Code § 5-11-5.5-1, et seq.

## COUNT II – Retaliation in Violation of the False Claims Act and Indiana's False Claims and Whistleblower Protection Act

48. Dr. Snider incorporates all of his above allegations as though fully stated herein.

49. Defendants retaliated against Dr. Snider by refusing to pay him for his work after he objected to their pattern and practice of violating the Anti-Kickback Statute. In so doing, Defendants violated the retaliation prohibitions enumerated in 31 U.S.C. § 3730(h) and Indiana Code § 5-11-5.5-8.

50. Based on the foregoing, Defendants are liable for two times the amount of Dr. Snider's unpaid compensation, plus interest, and compensation for any special damages sustained as a result of the retaliation, including litigation costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

51. Dr. Snider respectfully requests that the Court enter judgment against all Defendants; that the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false or fraudulent claims alleged in this Complaint, plus statutorily entitled penalties and pre- and post-judgment interest; that Dr. Snider be awarded reasonable attorneys' fees, costs and expenses that he incurred in bringing this case; that Dr. Snider be awarded the maximum percentage of recovery allowed to him under the False Claims Act and the Indiana False Claims Act; and that the Court award any such other relief as it deems proper.

## JURY DEMAND

52. Dr. Snider demands a trial by jury on any claims so triable.

Respectfully submitted,

/s/ *F. Anthony Paganelli*
F. Anthony Paganelli (18425-53)

*/s/ Jonathan A. Bont*
Jonathan A. Bont (IN 28476-49)

PAGANELLI LAW GROUP
10401 N. Meridian St., Suite 450
Indianapolis, IN 46290
Tel: 317/550-1855
Fax: 317/569-6016
E-Mail: tony@paganelligroup.com
jon@paganelligroup.com