UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA and the STATE OF INDIANA *ex rel.* DION SNIDER, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:18-cv-210 |
| CENTERS FOR PAIN CONTROL, INC. and CHETAN PURANIK, M.D., | ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the court on the Motion to Dismiss [DE 29] filed by the defendants, Centers for Pain Clinic, Inc. and Chetan Puranik, M.D., on May 31, 2019. For the following reasons, the motion is **DENIED**.

*Background*

On May 31, 2019, the plaintiff, Dr. Dion Snider, on behalf of the United States of America and the State of Indiana, filed this action against the defendants, Centers for Pain Clinic, Inc. (CPC) and Chetan Puranik, M.D., alleging that they violated the False Claims Act, 31 U.S.C. § 3729 (FCA), and the Indiana False Claims and Whistleblower Protection Act, Ind. Code. § 5-11-5.5-1 (IFCA), when they engaged in illegal inducement under the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b (AKS). Additionally, Snider has asserted a claim for retaliation under the FCA and IFCA against the defendants.

Dr. Dion Snider is a board-certified Chiropractor in the State of Indiana. In March 2016, Dr. Snider alleges that Dr. Puranik, founder and CEO of CPC, approached him and proposed that he become affiliated with CPC to provide chiropractic services, rehabilitation services, and

monitor and advise CPC's business systems, marketing efforts, and regulatory compliance at all of CPC's locations. Beginning in April 2016, Dr. Snider worked for CPC, first as an independent contractor and then as an employee. In fulfilling his role as a member of CPC's marketing group, Dr. Snider alleges that he noticed that CPC had created flyers for prospective patients which advertised "free massages" with the purchase of trigger point therapy. Dr. Snider claims that he informed CPC that the flyer should include a disclaimer that the "free massages" did not apply to Medicaid or Medicare beneficiaries but that his comments were ignored.

Dr. Snider claims that 90% of CPC's patients received Medicaid or Medicare. Dr. Snider alleges that CPC's billing claims confirmed that CPC was not billing Medicare or Medicaid patients for massage therapy sessions, where the patients were also receiving, and the respective Government payer was being billed for, trigger point injections on the same date of service. As a result, Dr. Snider claims that the defendants illegally induced Medicare and Medicaid patients into purchasing trigger point therapy with the incentive of a free massage, thereby violating the AKS, the FCA, and the IFCA.

Additionally, Dr. Snider claims that the defendants retaliated against him by first refusing to pay him and then terminating him on March 23, 2018 because he objected to their practice and pattern of violating the AKS.

In lieu of filing an answer to Dr. Snider's complaint, the defendants filed the instant motion to dismiss on March 31, 2019 pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Dr. Snider responded in opposition on June 21, 2019, and the defendants filed their reply on July 3, 2019. On December 14, 2020, Dr. Snider filed a motion requesting a hearing on this motion. On April 23, 2021, the parties consented to the magistrate judge.

*Discussion*

**Federal Rule of Civil Procedure 12(b)(6)** allows for a complaint to be dismissed if if it fails to "state a claim upon which relief can be granted."  Allegations other than those of fraud and mistake are governed by the pleading standard outlined in Rule 8(a), which requires a "short and plain statement" to show that a pleader is entitled to relief.  **Federal Rule of Civil Procedure 8(a)(2)**.  *See* **Cincinnati Life Insurance Co. v. Beyrer**, 722 F.3d 939, 946 (7th Cir. 2013).  The Supreme Court clarified its interpretation of the Rule 8(a)(2) pleading standard in a decision issued in May 2009.  While Rule 8(a)(2) does not require the pleading of detailed allegations, it nevertheless demands something more "than an un-adorned, the-defendant-unlawfully-harmed-me accusation."  **Ashcroft v. Iqbal**, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  In order to survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " **Iqbal**, 556 U.S. at 678 (quoting **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)); *Cincinnati Life Insurance*, 722 F.3d at 946 ("The primary purpose of [Fed.R.Civ.P. 8 and 10(b) ] is to give defendants fair notice of the claims against them and the grounds supporting the claims")(quoting **Stanard v. Nygren**, 658 F.3d 792, 797 (7th Cir. 2011)); **Peele v. Clifford Burch**, 722 F.3d 956, 959 (7th Cir. 2013) (explaining that one sentence of facts combined with boilerplate language did not satisfy the requirements of Rule 8); **Joren v. Napolitano**, 633 F.3d. 1144, 1146 (7th Cir. 2011); **United States ex rel. Berkowitz v. Automation Aids, Inc.**, 896 F.3d 834, 839 (7th Cir. 2018).  This pleading standard applies to all civil matters.  *Iqbal*, 556 U.S. at 684.

The decision in *Iqbal* discussed two principles that underscored the Rule 8(a)(2) pleading standard announced by *Twombly*.  *See Twombly,* 550 U.S. at 555 (discussing Rule 8(a)(2)'s

3

requirement that factual allegations in a complaint must "raise a right to relief above the speculative level"). First, a court must accept as true only *factual* allegations pled in a complaint; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." **Automation Aids, Inc.**, 896 F.3d 834, 839 (internal citations omitted). Next, only complaints that state "plausible" claims for relief will survive a motion to dismiss: if the pleaded facts do not permit the inference of more than a "mere possibility of misconduct," then the complaint has not met the pleading standard outlined in Rule 8(a)(2). **Iqbal**, 556 U.S. at 678–79; *see also* **Brown v. JP Morgan Chase Bank**, 2009 WL 1761101, *1 (7th Cir. June 23, 2009) (defining "facially plausible" claim as a set of facts that allows for a reasonable inference of liability). The Supreme Court has suggested a two-step process for a court to follow when considering a motion to dismiss. First, any "well-pleaded factual allegations" should be assumed to be true by the court. Next, these allegations can be reviewed to determine if they "plausibly" give rise to a claim that would entitle the complainant to relief. **Iqbal**, 129 S. Ct. at 1949-50; **Bonte v. U.S. Bank, N.A.**, 624 F.3d 461, 465 (7th Cir. 2010). Reasonable inferences from well-pled facts must be construed in favor of the plaintiff. **Murphy v. Walker**, 51 F.3d 714, 717 (7th Cir. 1995); **Maxie v. Wal-Mart Store**, 2009 WL 1766686, *2 (N.D. Ind. June 19, 2009)(same); **Banks v. Montgomery**, 2009 WL 1657465, *1 (N.D. Ind. June 11, 2009)(same).

Allegations of fraud or mistake "are subject to the heightened pleading requirements of Rule 9(b). **Automation Aids, Inc.**, 896 F.3d at 839. The plaintiff must state the circumstances surrounding the fraud or mistake "with particularity," although these allegations are still bound by the standards of Rule 8(a)(2). **Fed. R. Civ. P. 9(b)**; *see Iqbal*, 129 S. Ct. at 1954 (explaining that the heightened pleading standard of Rule 9(b) does not grant a "license to evade" the

4

constraints of Rule 8). However, what constitutes sufficient particularity may "depend on the facets of a given case." ***Automation Aids, Inc.***, 896 F.3d at 839.

To plead fraud with the required particularity, "the complaint must state the identity of the person making the misrepresentation, the time, the place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." ***U.S. ex rel. Grenadyor v. Ukrainian Village Pharmacy, Inc.***, 772 F.3d 1102, 1106 (7th Cir. 2014); *see* ***Automation Aids***, 896 F.3d at 840 (*quoting* ***Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreens Co.***, 631 F.3d 436, 442 (7th Cir. 2011)) (finding that the plaintiff must describe the "who, what, when, where, and how of the fraud – the first paragraph of any newspaper story"). Although the misrepresentation that a plaintiff claims was fraudulent must be stated in his complaint, Rule 9(b) does not demand that the plaintiff's "theory of the case" be explained; the sufficiency of this portion of a claim is tested under Rule 12(b)(6). ***Midwest Commerce Banking Co. v. Elkhart City Ctr.***, 4 F.3d 521, 523-24 (7th Cir. 1993); ***Trustees of Teamsters Union No. 142 Pension Trust v. Cathie's Cartage, Inc.***, 2014 WL 1117447, at *4 (N.D. Ind. Mar. 20, 2014).

In ***Elkhart***, the court found that the plaintiff's complaint, which alleged that a law firm fraudulently failed to inform the plaintiff that a loan agreement remained unsigned, satisfied Rule 9(b) because it "set forth the date and content of the statements. . . that it claimed to be fraudulent." 4 F.3d at 524. Importantly, it is in the *complaint*, and not in a party's subsequent *brief*, where the "requisite particularity" must first be pled. ***Kennedy***, 348 F.3d at 593.

As to count I of the complaint, the violation of the FCA and IFCA, the defendants argue that Dr. Snider has failed to plead with particularity the requisite elements of his claim. A violation of the AKS occurs when a person "knowingly and willfully offers or pays any

5

renumeration … to any person to induce such person … to purchase … any service … for which payment may be made in whole or in part under a Federal health care program." **42 U.S.C. § 1320a-7b(b)(2)(B)**.  In turn, a violation of the AKS constitutes a false or fraudulent claim for purposes of the FCA, as well as the IFCA because the two acts mirror each other. **42 U.S.C. 1320-7b(g)**; **31 U.S.C. § 3729(a)(1)(A)**; *see U.S. v. Wagner*, 2018 WL 4539819, at *4, fn. 2 (N.D. Ind. 2018) (noting that "the Court's discussion of the FCA claims applies with equal force to the Indiana FCA claims [b]ecause the Indiana FCA mirrors the Federal FCA in all material respects") (internal quotations and citations omitted).

The parties do not dispute that in order to establish a violation of the AKS, Dr. Snider must have alleged that (1) the defendants knowingly and willfully (2) offered or provided free massage therapy (3) to induce patients or prospective patients to obtain trigger point therapy (4) which was payable in whole or in part by Medicare or Medicaid.

First, the defendants claim that the complaint contains no allegation that anyone from CPC ever offered any patient or prospective patient free massage services in exchange for obtaining trigger point injections.  Rather, they claim that Dr. Snider seeks to create "the illusion of an offer" by alleging he saw a flyer advertising "free massages."  They argue that Dr. Snider never alleges that any patient saw the flyer and that Dr. Snider has not alleged who he told at CPC that the flyer needed a disclaimer, where the conversation took place, or how he told them. Next, the defendants argue that Dr. Snider has not alleged any facts indicating that the unbilled massage therapy was provided to induce any patient to obtain the trigger point injections. Therefore, the defendants claim that Dr. Snider has not alleged any facts demonstrating the allegedly unbilled massage services had any casual connection to the claim for trigger point injection services.  In other words, the defendants argue, Dr. Snider presents no allegations that

6

the patients would not have obtained the trigger point injections but for the alleged unbilled massage therapy. Finally, the defendants argue that Dr. Snider has not alleged that any of the claims for trigger point therapy were actually submitted to the government.

In measuring Dr. Snider's complaint against the heightened pleading standards of Rule 9(b), the court is mindful of the Seventh Circuit's "warning" that "courts and litigants often erroneously take an overly rigid view of the formulation and that the precise details that must be included in a complaint may vary on the facts of a given case*.*" ***U.S. ex rel. Presser v. Acadia Mental Health Clinic, LLC***, 836 F.3d 770, 776 (7th Cir. 2016) (internal quotations omitted). The court recognizes that Dr. Snider must "use some … means of injecting precision and some measure of substantiation into [his] allegations of fraud," but as "a requirement of proof beyond a reasonable doubt need not exclude all possibility of innocence … a pleading [need not] exclude all possibility of honesty in order to give the particulars of fraud.  It is enough to show in detail, the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy." 836 F.3d at 776; ***U.S. ex rel Lusby v. Rolls-Royce Corp.***, 570 F.3d 849, 844-55 (7th Cir. 2009).

Dr. Snider has sufficiently plead that the defendants knowingly and willfully offered free massage therapy by claiming that the defendants created a flyer advertising free massages in exchange for the purchase of trigger point therapy.  Dr. Snider claims that he informed the defendants of their unlawful practice as soon as he became aware, showing that, at a minimum, the defendants had constructive knowledge that what they were doing was illegal.  Dr. Snider has supported his allegation that the defendants provided the free massage services to patients on the same date they purchased trigger point therapy by providing instances of six patents who were not charged for a massage that they received on the same date they purchased trigger point

therapy.  Additionally, he has provided allegations that patients who were charged for massages did not purchase the trigger point therapy on the same date.  Finally, he pled that 90% of CPC's patients were Medicare or Medicaid beneficiaries. This leads to the reasonable inference that patients receiving Medicare or Medicaid viewed the flyer and purchased trigger point therapy with the incentive of receiving a free massage.

The defendants' argument that Dr. Snider fails to plead with sufficient particularity that that claims were submitted to Medicare or Medicaid is incorrect.  First, Dr. Snider has alleged that 90% of CPC's patients receive either Medicaid or Medicare.  Second, Dr. Snider has provided factual allegations showing the billing codes used for patients who received free massages on the same date they purchased trigger point therapy and a different billing code for those who received a massage on a date when trigger point therapy was not purchased. The Seventh Circuit's case law "establishes that a plaintiff does not need to present, or even include allegations about, a specific document or bill that the defendants submitted to the Government. *Acadia*, 836 F.3d at 777 (*citing* **Lusby**, 570 F.3d at 849).

For example, in *Acadia*, the Seventh Circuit found that the particularity requirements of Rule 9(b) were met where the plaintiff stated in her complaint that she was told that almost all of Acadia's patients were on Title 19 and that they delt with Medicare.  *Acadia*, 836 F.3d at 778.  Additionally, the plaintiff's complaint "made clear that the questionable practices and procedures were applied to all patients at the clinic." 836 F.3d at 778.  The Seventh Circuit held, "for now, an inference [that Acadia billed the government for their services] wa[s] enough." 836 F.3d at 778.  Here, Dr. Snider claims that 90% of CPC's patients were Medicare or Medicaid beneficiaries, therefore creating a reasonable inference that at least some of the patients who purchased trigger point therapy for the free massage incentive received government aid.

Accordingly, Dr. Snider has sufficiently plead that the defendants violated the AKS which is a violation of the FCA.

As stated above, the FCA mirrors the IFCA, therefore the analysis for a violation of the FCA is identical to that of a violation of the IFCA. Therefore, a separate analysis of whether Dr. Snider sufficiently plead a violation of the IFCA is not necessary. *See generally* **U.S. v. Wagner**, 2018 WL 4539819, at *4.

Next, the defendants argue that Dr. Snider has failed to state a claim against Dr. Puranik, individually, because he raised no specific allegations pertaining to Dr. Puranik's involvement in the alleged fraudulent scheme. Dr. Snider has alleged, and the defendants do not dispute, that Dr. Puranik is the CEO of CPC. In his complaint, Dr. Snider claimed that Dr. Purnaik approached him and eventually hired him to work for CPC in 2016. Dr. Snider claims that he "notified Defendant Puranik that CPC's pattern and practice and practice of giving patients free massages as long as they undergo a trigger point injection on the same date of service, amounts to illegal inducement. (DE 1 at ¶¶ 30-31). While CEOs have varying involvement levels depending on the company, the fact that Dr. Snider has claimed that he informed Dr. Puranik of CPC's illegal practices and, as a result, Dr. Puranik withheld pay and eventually terminated him points to the reasonable conclusion that Dr. Puranik was an actor in alleged scheme.

Finally, the defendants claim that Dr. Snider has failed to state a claim for retaliation against both CPC and Dr. Puranik. First, the defendants argue that Dr. Snider's retaliation claim is invalid because he failed to plead a valid claim for violation of the FCA. This argument is incorrect for all of the reasons stated above. The court has established that Dr. Snider has sufficiently plead a violation of the FCA and IFCA.

Under the FCA, "any employee … shall be entitled to all relief necessary to make that employee … whole, if that employee … is discharged … because of lawful acts done by the employee … in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." **31 U.S.C. § 3730(h)(1)**. In order to state a claim for **§ 3730(h)** retaliation, the plaintiff must show that (1) his actions were taken in furtherance of an FCA enforcement action and were therefore protected by the statute; (2) his employer knew that he was engaged in such protected activity; and (3) his discharge was motivated, at least in part, by the protected activity. ***Kuhn v. LaPorte County Mental Health Council***, 2008 WL 4099883, at *3 (N.D. Ind. Sep. 4, 2008) (*citing* ***Brandon v. Anesthesia & Pain Mgmt. Assoc.***, *Ltd.*, 277 F.3d 936, 944 (7th Cir. 2002). In determining whether an employee's actions are protected under § 3730(h), the Seventh Circuit has found that "an employee need not have actual knowledge of the FCA for his actions to be considered 'protected activity,'" as long as "the employee in good faith believes, and a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government." ***Fanslow v. Chicago Mfg. Center, Inc***., 384 F.3d 469, 479-80 (7th Cir. 2004).

The defendants argue that Dr. Snider's alleged complaint to CPC did not discuss treatment provided to Medicare or Medicaid beneficiaries, did not allege that he discussed any prior or potential claim being submitted for payment to the government, and did not discuss any actual transactions or patient records. Rather, they claim, he only has alleged generalized suspicions. The court disagrees with the defendants' assessment. Dr. Snider has alleged that 90% of CPC's patients were Medicare or Medicaid recipients, and he has provided examples of patients who were not billed for massages on the same date they purchased trigger point therapy. For that reason, he informed CPC and Dr. Puranik that the flyers needed to contain a disclaimer

10

that the free massage incentive was only available to patients who did not receive government benefits. As a result, he has alleged that Dr. Puranik refused to pay him and eventually terminated him. Based on the complaint, it was only after Dr. Snider informed CPC and Dr. Puranik about their illegal practice that they retaliated against him. Dr. Snider has sufficiently stated a claim against the defendants for retaliation.

Based on the foregoing reasons, the Motion [DE 24] is **DENIED** and the Motion for Hearing [DE 59] is **DENIED as moot**.

ENTERED this 5th day of May, 2021.

/s/ Andrew P. Rodovich
United States Magistrate Judge